57 So.2d 620

**PETTY et al. v. HALL et al.**

**I Div. 473.**

Supreme Court of Alabama.
March 13, 1952.

See, also, Petty v. Chamberlain, 253 Ala. 453, 45 So.2d 161.

———◆———

Horne & Brantley, Monroeville, and Douglas S. Webb, Atmore, for appellants.

Hubert M. Hall, Bay Minette, for appellees.

PER CURIAM.

The right to rescind, which the grantor has in a conveyance subject to the terms of § 15, Title 20, Code of 1940, is a personal right, not a property right, and is not transferable until the grantor has elected to rescind during his lifetime and has taken proceedings in equity to annul the conveyance. But when he has done that in his lifetime, the right ceases to be personal and thereby becomes property. It has been held by this Court that when such a grantor has a proceeding in equity to annul the conveyance and dies before there is a final decree in that cause, the right descends to his heirs and they may revive it in their name and prosecute it to a conclusion. Heartsill et ux. v. Thompson, 245 Ala. 215, 16 So.2d 507; Bobie v. Moss, 246 Ala. 559, 21 So.2d 680; Hughes v. Duke, 251 Ala. 220, 36 So.2d 300.

It necessarily results from that situation that the grantor having elected to rescind and having a suit pending in equity to effect a rescission, has such a property right as may be conveyed by that grantor in his lifetime. The rescission and cancellation become effective as of the date of the election, manifested by filing the bill in equity. The subsequent decree in the cause annulling the deed relates back to the filing of the bill. Therefore the grantor may at any time, after filing the bill, convey the property or contract to convey it, or make such other disposition of it as is authorized by law, the same as if the deed sought to be cancelled had never been executed. And if pending that suit, the grantor being the sole complainant in the cause conveys the land to a third person, that third person occupies the status which obtains with respect to any other suit in equity by a complainant seeking to recover the land, and in order to do so to push aside an obstacle in the way of it.

When that status arises the purchaser has the right to intervene in the suit in equity and make himself a party in order to have his rights determined, using the name of his grantor. Gipson v. Hyatt, 243 Ala. 118, 8 So.2d 926; Vaughn v. Brue, 245 Ala. 107, 16 So.2d 17, 150 A. L.R. 668.

Upon the basis of that reasoning, one who, pending such a suit, makes a valid contract with the grantor for the purchase of the property or acquires from him a mortgage or lien upon it, has a right which is enforcible by him, and in order to protect it he may intervene in the suit to see that it is prosecuted to a successful conclusion. The grantor, complainant in such a suit, has no right to defeat the legal or equitable claim of such purchaser which he caused to be created by dismissing the suit after he conferred such rights upon the other.

That is the status of those who seek to intervene as complainants in this cause and who seek to prevent the original complainant and grantor from dismissing this suit after he has conferred upon the intervenors property rights which are enforcible in equity. Therefore these intervenors should not be excluded from participating in the suit.

The decree of the trial court overruling demurrer to the petition for intervention

is consistent with these views and it is affirmed.

Affirmed.

LIVINGSTON, C. J., and FOSTER, LAWSON, SIMPSON and STAKELY, JJ., concur.

BROWN, J., dissents.

BROWN, Justice (dissenting).

The decision on the former appeal touching this litigation is reported in Petty v. Chamberlain, 253 Ala. 453, 45 So.2d 161, 162. On that appeal the court speaking of the decree appealed from observed:

"The effect of the holding was to ignore the rule of our cases and to allow a rescission under the statute by a grantor in such a conveyance, regardless of any unconscionable conduct on his part and regardless of how well the grantee may have performed his duties under the agreement or the expense he might have undergone to that end. This is not the law.

"The rule is that where a grantor rescinds a deed, of which the material part of the consideration is support and maintenance, the *grantee having complied with the terms of the conveyance,* may be compensated for reasonable expenditures and services performed in caring for the grantor and for the value of such reasonable permanent improvements to the property as have been made as in equity and good conscience might appear to be just. Cornelius v. Walker [et al.], 248 Ala. 154, 27 So.2d 17; Freeman v. Freeman, 249 Ala. 255, 30 So.2d 669." [Italics supplied.]

The decree of the circuit court was reversed in its entirety, the demurrer to the cross-bill overruled and the cause was remanded, leaving "the case at issue on the bill and the answer and cross bill." Petty v. Chamberlain, supra; Marsh v. Elba Bank & Trust Co., 205 Ala. 425, 88 So. 423; 5 C.J.S., Appeal and Error, § 1950, page 1476.

The record before us shows that after the case was remanded to the circuit court the complainant on January 15, 1951, appearing in person filed the following motion: "Now comes the Complainant in her own proper person and moves the Court to dismiss the cause now pending in said Court wherein she is Complainant and Stinson Floman Petty and Vidie Lee Petty are Respondents and in support of said motion Complainant avers that said action as originally instituted was ill advised and the Complainant is desirous of dismissing said cause." And on February 2, 1951, the respondents Petty likewise appearing for themselves filed waiver of notice of the motion to dismiss and consented to the dismissal.

Thereafter on February 23, 1951, The Baldwin County Bank, a corporation, C. E. Robinson and H. M. Hall filed their joint petition seeking to be allowed to intervene and alleging that before the appeal was taken on May 31, 1949, the complainant Beatrice Chamberlain executed a mortgage to H. M. Hall, her solicitor, which was duly transferred by him to The Baldwin County Bank, a corporation, this mortgage being for the purpose of paying money owed for her support and maintenance and for her future maintenance. The bill of complaint is silent as to what property was conveyed by the mortgage and a copy of same was not attached to the petition. The petition further alleged that on October 24, 1949, subsequent to the decree and subsequent to the taking of the appeal, the said Beatrice Chamberlain undertook to sell the land involved to one C. E. Robinson and signed a deed to him which was not delivered but was placed in escrow and he was put in possession of the premises. It is alleged that he paid a portion of the purchase price, towit, one hundred dollars. A copy of the agreement between C. E. Robinson and Beatrice Chamberlain was set out as an exhibit to the petition. It is as follows:

"Bay Minette, Alabama
"October 24, 1949.

"Received of C. E. Robinson, $100.00, being a part of the purchase price of the land this day I am selling to them and being located in Section 32, Township 1, South, Range 3 East, and being the only land owned by me in Baldwin County, Alabama, and containing 39 acres, more or

less, and being known as the Joseph Chamberlain place.

"Mr. Robinson is to have and is given the right to occupy the place immediately, and to continue in possession until the title to the land is cleared up, at which time he is to pay me the balance of the purchase price. The purchase price as agreed upon between Mr. Robinson and me is $2500.00. The $100.00 this day paid to me will be deducted from the $2500.00.

"In the event that Mr. Robinson should have to pay out any amount toward perfecting the title to the said property, he should have credit for such amount as against the purchase price, and being understood that there is ½ now outstanding, a mortgage to the Baldwin County Bank, Bay Minette, Alabama, and also a suit in the Supreme Court of the State of Alabama, styled Stinson Floman Petty et al. vs. Beatrice Chamberlain. Should the Supreme Court rule that I am to pay Mr. Petty any amount, then Mr. Robinson is authorized to pay such amount as determined by the Supreme Court, and also the balance due the Baldwin County Bank, for which he shall have a credit against the purchase price as herein.

"The Baldwin County Bank is now holding a deed, and is to hold the deed until Mr. Robinson pays the balance of the purchase price as herein above set out. The deed to remain there and to be withdrawn by neither of us.

(Signed) Beatrice Chamberlain."
"Louise Morris
"A. H. Robinson
"Witnesses.
"Filed: Feb. 23, 1951
"Alice J. Duck, Register."

The petition further alleged that H. M. Hall at the request of the said Beatrice Chamberlain filed her suit to have the deed set aside; that no fee has been paid him; that the complainant has never requested him to dismiss the cause nor relieved him of his duty as her solicitor; that he made repeated efforts to contact Beatrice Chamberlain and found she was at the home of Stinson Floman Petty and Vidie Lee Petty who had taken and were keeping her there. The petition further alleges that on January 5, 1951, at the instance and persuasion of Stinson Floman Petty, who went with her, she came to the office of the Register of the Court and filed her motion "expressing her desire to dismiss the cause", that said action was at the instance of the "orginal respondent" and for the purpose of defrauding the petitioners.

The petition prayed that said petitioners be allowed to intervene and that the court enter a decree ascertaining and determining the amount due the Baldwin County Bank on the mortgage referred to and fixing a lien on the property involved; that upon failure of payment, sale of the property be ordered for satisfaction of the lien; that the Court ascertain what right C. E. Robinson has under his contract with the said Beatrice Chamberlain and that he be granted such relief as may be appropriate; that the court ascertain and fix the fee of H. M. Hall, as solicitor, and that a lien be established against the property involved in this cause and the same be ordered sold for the satisfaction thereof unless said fee is paid, and for general relief.

The respondents to the original bill filed demurrers to the petition and on the 2nd day of August, 1951, the court overruled the demurrers and allowed petitioners to intervene. From that ruling the respondents Petty prosecute this appeal. Cortner v. Galyon, 223 Ala. 405, 137 So. 30.

The insistence is that the facts stated show no equitable right in the petitioners to intervene; that the petition seeks to inject into the proceedings matters wholly unrelated to the controversy presented in the original bill; that the transactions on which the petition is based is foreign to and outside the purview and scope of the statute on which the complainants' case rests, and, finally, that the orginal parties had the right to settle their controversy and dismiss the original bill; that the petitioners in dealing with the property after the court had entered the decree dealt at their risk and peril.

The basis of equity on which the grantee named in such deed rests is that the grantee has complied with the terms of the agreement which constituted the con-

sideration for the deed and is entitled to have just compensation for sustenance furnished the grantor upon cancellation of the agreement. Petty v. Chamberlain, 253 Ala. 453, 455, 45 So.2d 161. If the grantee breaches the contract and falls short of full compliance, his claim for reimbursement is without equity.

The policy underlying the statute, Code 1940, Tit. 20, § 15, is well expressed in the opinion of Mr. Justice Gardner in Bush v. Greer, 235 Ala. 56, 177 So. 341, reaffirmed in Heartsill et ux. v. Thompson, 245 Ala. 215, 218, 16 So.2d 507, as follows:

"In Bush v. Greer, 235 Ala. 56, 177 So. 341, this court, passing upon the constitutionality of the statute, dealt quite clearly with the origin, occasion for, and objective of the statute, saying:

"'The grantees in such a conveyance, therefore, accept the same with the limitations of the statute written into it, and with full knowledge of the rights of the grantor, and the consequent defeasible character of the instrument.

"'The argument that such a statute destroys the right of contract is but a challenge to the power of the Legislature to enact a statute of this character. But it needs no extended discussion to disclose that such a statute comes well within the police power and is a proper exercise thereof.

"'The books abound with cases where the aged, weak, or afflicted had improvidently executed conveyances upon the promise of support. Johnson v. Chamblee, 202 Ala. 525, 81 So. 27; Russell v. Carver, 208 Ala. 219, 94 So. 128; Ballenger v. Ballenger, 208 Ala. 147, 94 So. 127; Morrow v. Morrow, 213 Ala. 131, 104 So. 393; Hunter v. Watters, 226 Ala. 175, 145 So. 472; 18 Corpus Juris 169.

"'Frequently there was injustice and fraud, but often this was difficult of proof, and the grantor led into the transaction by the tempting promise of food and shelter.

The lawmakers considered this a growing evil, and the statute was passed as declaratory of a public policy, and well within the police power of the state.'

"That case recognizes that the statute is a restriction on the power to contract, striking out to a degree the terms of a contract as agreed upon by the parties, and writing into it other terms of which the parties are bound to take notice. Such a statute is to be construed rather strictly so as to confine its operation to legislative purpose, but not so narrowly as to defeat such purpose." 245 Ala. 218, 16 So.2d 509.

The petitioners dealt with the complainant in the light of the circumstances in which she was situated and to allow the petitioners the relief which they jointly seek would convert the supposed and intended beneficiary into the victim. The petitioners should be left to the remedy under the law as it existed prior to the enactment of the statute. See Gardner v. Knight, 124 Ala. 273, 27 So. 298; Vaughn v. Brue, 245 Ala. 107, 16 So.2d 17, 150 A.L.R. 668.

The allegations of the petition for intervention show that petitioners had knowledge of the proceedings by the complainant against the respondents Petty to revoke and cancel the deed and dealt with the complainant at their peril. Morton & Bliss v. New Orleans & Selma Ry. Co., 79 Ala. 590; Peevey v. Cabaniss, 70 Ala. 253. "Generally a person who acquires rights in the subject matter of the litigation pending review by appeal or writ of error takes subject to the final disposition of the case." 54 C.J.S., Lis Pendens, § 36(e), page 604. "One purchasing property or acquiring a right with actual notice of a pending suit relating thereto is particularly subject to the ensuing judgment or decree." 54 C.J. S., Lis Pendens, § 2, page 572. "Furthermore, actual notice, in many respects, is more extensive than the doctrine of lis pendens; and, in case of such notice, the filing of a lis pendens notice may be regarded as immaterial." 54 C.J.S., Lis Pendens, § 2, page 572; Batson v. Etheridge, 239 Ala. 535, 195 So. 873. And "under this doctrine one who acquires an interest in property pending litigation in relation thereto takes subject to the result of such litigation." 54 C.J.S., Lis Pendens, § 1, page 570.

I am of the opinion that the circuit court erred in overruling the demurrer to the

joint petition of the several persons seeking intervention in respect to claims in no way related to the controversy between the original parties to the suit and to each other and I, therefore, dissent.